UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

UNITED STATES OF AMERICA

v.  Case No. 3:21-cr-48(S1)-TJC-PDB

MAR'QUEZ MAURICE MICKLER

### UNITED STATES' NOTICE OF MAXIMUM PENALTIES, ELEMENTS OF OFFENSE, PERSONALIZATION OF ELEMENTS, AND FACTUAL BASIS

COMES NOW the United States of America, by and through the undersigned Assistant United States Attorney, stating as follows:

A. MAXIMUM PENALTIES

The defendant has expressed a desire to enter pleas of guilty to the charges against him in the superseding Indictment. Count One charges the defendant with conspiracy to distribute and to possess with intent to distribute alpha-PVP and MDMA, in violation of 21 U.S.C. §§ 846 and 841(b)(1)(C). The maximum penalties for Count One are a term of imprisonment of not more than 20 years, a fine of not more than $1,000,000, or both a term of imprisonment and a fine, a term of supervised release of at least three years, and a special assessment of $100, which is due on the date of sentencing. A violation of the terms and conditions of supervised release is punishable by a maximum sentence of not more than two years

of additional imprisonment as well as the possibility of an additional term of supervised release.

Count Four charges the defendant with conspiracy to commit money laundering, in violation of 18 U.S.C. §§ 1956(h) and 1956(a)(1)(B). The maximum penalties for Count Four are a term of imprisonment of not more than 20 years, a fine of not more than $500,000 or twice the value of the property involved in the money laundering transactions, whichever is greater, or both a term of imprisonment and a fine, a term of supervised release of not more than three years, and a special assessment of $100, which is due on the date of sentencing. A violation of the terms and conditions of supervised release is punishable by a maximum sentence of not more than two years of additional imprisonment as well as the possibility of an additional term of supervised release.

Cumulatively, the total maximum penalties for both counts are a term of imprisonment of not more than 40 years, a fine of not more than $1,500,000 or $1,000,000 plus twice the value of the property involved in the money laundering transactions, whichever is greater, or both a term of imprisonment and a fine, a term of supervised release of at least three years, and a special assessment of $200, which is due on the date of sentencing. A violation of the terms and conditions of supervised release is punishable by a maximum sentence of not more than four years of additional imprisonment as well as the possibility of an additional term of supervised release.

2

In addition, pursuant to 21 U.S.C. § 853(a)(1) and (2), the defendant must forfeit any property constituting, or derived from, any proceeds obtained, directly or indirectly, as a result of the offense alleged in Count One, and any property used, or intended to be used, in any manner or part, to commit, or to facilitate the commission of, the offense, and, pursuant to 18 U.S.C. § 982(a)(1), the defendant must forfeit any property, real or personal, involved in the offense alleged in Count Four, or any property traceable to such property.

B.  ELEMENTS OF THE OFFENSES

The elements of Count One are:

(1)  Two or more people in some way agreed to try to accomplish a shared and unlawful plan to distribute or to possess with intent to distribute controlled substances; and

(2)  The defendant knew the unlawful purpose of the plan and willfully joined in it.

The elements of Count Four are:

(1)  Two or more people agreed to try to accomplish a common and unlawful plan to commit money laundering, in violation of 18 U.S.C. § 1956; and

(2)  The defendant knew about the plan's unlawful purpose and voluntarily joined in it.

The elements of a violation of 18 U.S.C. § 1956 are:

(1)  The defendant knowingly conducted or tried to conduct a financial transaction;

(2)  The defendant knew that the money or property involved in the transaction were the proceeds of some kind of unlawful activity;

3

(3) The money or property came from an unlawful activity, specifically conspiracy to distribute and to possess with intent to distribute controlled substances, as alleged in Count One of the superseding Indictment; and

(4) The defendant knew that the transaction was designed, in whole or in part, to conceal or disguise the nature, location, source, ownership, or control of the proceeds, or the defendant participated in the transaction to avoid a transaction-reporting requirement under state or Federal law.

C. PERSONALIZATION OF ELEMENTS

As to Count One:

1. Beginning in or about February 2020 and continuing until on or about April 13, 2021, in Duval County, in the Middle District of Florida, did you and at least one other person agree to try to accomplish a shared and unlawful plan to distribute and to possess with intent to distribute alpha-PVP and MDMA, each being a Schedule I controlled substance?

2. Did you know the unlawful purpose of the plan and willfully join in it?

As to Count Four:

1. In or about January 2020, in Duval County, in the Middle District of Florida, did you and at least one other person agree to try to accomplish a common and unlawful plan to commit money laundering, as alleged in the superseding Indictment?

2. Did you know about the plan's unlawful purpose and voluntarily join in it?

D. FACTUAL BASIS

1. Purpose

The following facts are set forth to aid the Court in making an inquiry to satisfy it that there is a factual basis for the plea of guilty in accordance with Rule 11(b)(3), Fed. R. Crim. P. The government reserves its right to provide all relevant information concerning the defendant and the offense committed to the Probation Office and the Court for sentencing purposes.

2. Facts

Beginning in February 2020, at the latest, and continuing until April 13, 2021, the defendant, MAR'QUEZ MAURICE MICKLER, distributed drugs from a "trap house" that was controlled by co-defendants Kimberly and Neal Walker. A "trap house" is a residence out of which illegal narcotics are sold. Sellers at the trap house worked in regular shifts, usually three per day, and the trap house was almost always staffed by at least one seller, 24 hours a day. When a seller finished his shift, he provided Kimberly Walker with a count of the drugs remaining at the house and of the money that had been made from the drug sales. Kimberly Walker then told the seller how much he could take out of the money as his pay, which was about 25% of the money collected from the sales. The sellers also told Kimberly Walker

when they were getting low on drugs and she would arrange for more drugs to be brought to the trap house and for the packaging of additional drugs, if necessary.

During each shift, sellers at the trap house sold an average of approximately 44 grams of α-Pyrrolidinopentiophenone, or alpha-PVP, or a similar synthetic cathinone such as Eutylone or alpha-PiHP, all of which are sometimes called "flakka" and are Schedule I controlled substances, and approximately 3.4 grams of 3,4-methylenedioxymethamphetamine, or MDMA, or similar amphetamine-like drugs, all of which are sometimes called "molly" and are Schedule I controlled substances. The defendant worked about two shifts per week at the trap house. Accordingly, for the period from February 2020 through April 13, 2021, the defendant sold a total of approximately 5.5 kilograms of alpha-PVP or similar drugs and approximately 400 grams of MDMA or similar drugs.

On February 25, 2020, law enforcement officers searched a trap house on Meta Street in Jacksonville and the defendant was the only person present at the time of the search. During the search, officers recovered, among other things, cocaine, marijuana, and a synthetic cathinone believed to be 3,4-methylenedioxy-pyrovalerone, known as "MDPV", all of which were packaged for sale. The officers also seized $1,372 in cash and a drug ledger.

During the investigation, agents discovered that in April 2019, July 2019, and January 2020—periods during which the conspirators were distributing drugs—the defendant and others engaged in money laundering. On January 16,

2020, the defendant and six co-conspirators made eleven cash deposits in amounts of less than $10,000 into seven different accounts at two different credit unions, with the cash deposits totaling $45,540. On the same date, the defendant and the co-conspirators obtained seven cashier's checks with the deposited money, with the checks totaling $45,323.01. Kimberly Walker and Neal Walker used the checks to obtain ownership of two properties in Jacksonville by purchasing tax deeds from the government of Duval County for a total of $45,323.10. The property was then deeded to another business entity owned and controlled by Kimberly Walker and Neal Walker.

The cash deposited in these financial transactions were, as the defendant knew, proceeds of illegal drug trafficking. As the defendant also knew, the transactions—including the cash deposits, the obtaining of the cashier's checks, and the purchase of the properties—were designed to conceal and disguise the nature, location, source, ownership, and control of the proceeds. As he further knew, the purpose of depositing the cash in amounts of less than $10,000 was to avoid a transaction-reporting requirement under Federal law.

Respectfully submitted,

ROGER B. HANDBERG
United States Attorney

By: /s/ Arnold B. Corsmeier
ARNOLD B. CORSMEIER
Assistant United States Attorney
Florida Bar No. 869139
300 N. Hogan Street, Suite 7-350
Jacksonville, FL 32202-4270
Telephone: (904) 301-6300
Facsimile: (904) 301-6310
Email: chip.corsmeier@usdoj.gov

CERTIFICATE OF SERVICE

I hereby certify that on March 1, 2022, the foregoing was filed in open court and a copy was provided to the following:

Ronald W. Maxwell, Esq.

/s/ Arnold B. Corsmeier
ARNOLD B. CORSMEIER
Assistant United States Attorney

8